UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD S. KOBACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| METROWEST MEDICAL CENTER, | ) |
| LEONARD MORSE HOSPITAL, | ) CIVIL ACTION NO. 05-CV-10798-WGY |
| FRAMINGHAM UNION HOSPITAL, | ) |
| NEW ENGLAND MEDICAL CENTER, | ) |
| TUFTS UNIVERSITY SCHOOL OF | ) |
| MEDICINE, HMO BLUE OF | ) |
| MASSACHUSETTS, EMANUEL | ) |
| FRIEDMAN, M.D., JOHN P. LONG, M.D. | ) |
| AND EROL ONEL, M.D., | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEFENDANT, METROWEST MEDICAL CENTER'S, MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(b)

Now comes the Defendant, MetroWest Medical Center [1] ("MetroWest"), and

hereby requests that this Honorable Court grant its Motion for Summary Judgment

pursuant to Fed.R.Civ.P. 56(b).  In support of its Motion, MetroWest states the following:

## I.    FACTS AND PROCEDURAL HISTORY

The Plaintiff, Donald S. Koback, brought the instant medical malpractice action

against the above named Defendants alleging negligence, gross negligence, willful,

wanton and/or reckless conduct, failure to inform, breach of contract and civil rights

violations in connection with the insertion and removal of various penile implant devices

---

[1] MetroWest Medical Center comprises Leonard Morse Hospital and Framingham Union Hospital.

by the defendant physicians. Mr. Koback's claims against MetroWest appear to be vicarious in nature. Please refer to Plaintiff's Complaint and subsequent Amendments to the Complaint which are part of the Court record and are docketed as follows:  Document #1, filed 4/12/05, Complaint; Document #2, filed 4/26/05, Amended Complaint; Document #3, filed 5/2/05, Amended Complaint; Document #4, filed 5/2/05, Motion to Amend Complaint; Document #5, filed 5/3/05, Amended Complaint; Document #7, filed 5/11/05, Amended Complaint; Document #9, filed 5/17/05, Amended Complaint; and Document #10, filed 5/18/05, (Ninth) Amended Complaint.

On March 2, 2006, the Massachusetts Superior Court convened a medical malpractice tribunal in accordance with M.G.L. c. 231, §60B. After reviewing Mr. Koback's offer of proof and after hearing extensive oral argument by the parties, the tribunal panel found that the evidence presented was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry as to MetroWest or any other defendant. See Finding of Malpractice Tribunal, attached as Exhibit A. Mr. Koback thereafter posted bond to pursue his case against the Defendants.

## II. ARGUMENT

### A. MetroWest is Not Vicariously Liable for the Acts Alleged in Mr. Koback's Complaint as Such Acts were not Committed by MetroWest's Agents, Servants or Employees.

Mr. Koback's Complaint asserts that the defendant physicians, Dr. Onel, Dr. Friedman and Dr. Long negligently treated him and that MetroWest is vicariously liable as one or more of these physicians were MetroWest's agents, servants or employees.[2]

---

[2] While Mr. Koback's Complaint is convoluted, he appears to assert that the defendant physicians who treated him were employees of MetroWest and that his claims against MetroWest are based upon vicarious

Dr. Onel was neither affiliated with nor was he an employee of MetroWest at the time he treated Mr. Koback, and he did not treat Mr. Koback at MetroWest.[3] See Affidavit of Rebecca Heffernan, attached as Exhibit B. Dr. Friedman was recently dismissed from the case pursuant to his Motion for Summary Judgment.

The remaining defendant physician, Dr. Long, was not an agent, servant or employee of MetroWest but an independent contractor with staff privileges at MetroWest, thus MetroWest cannot be held liable for his alleged negligent actions. Physicians have traditionally been viewed as independent contractors, allowing hospitals to remain exempt from liability for the physician's negligent acts. Chase v. Independent Practice Association, Inc., 31 Mass. App. Ct. 661, 665(1991); Zucco v. Kane, 55 Mass. App. Ct. 76, 86 (2002). Hospitals may, however, be held vicariously liable where the hospital has the right to control or direct the actual conduct by the physician in the course of treating his or her patients. Chase v. Independent Practice Association, 31 Mass. App. Ct. at 665-666; Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424, 436 (2001). Vicarious liability for the physician's failure to use appropriate care should be premised on the hospital's right to control the physician's clinical care. Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. at 436. See also Kelley v. Rossi, 395 Mass. 661, 662 (1985) ("The right to control an agent's activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent's principal.")

Controlling clinical activities is not the only indicia of an employer-employee relationship, however. Dias v. Brigham Medical Associates, Inc., 438 Mass. 317, 322

---

liability. He alleges no direct claim against MetroWest except that which is noted in Section B of this Memorandum.

[3] Dr. Onel was affiliated with and treated Mr. Koback at Tufts-New England Medical Center.

(2002). Additional factors a Court may consider include 1) the right to hire or fire individual physicians, 2) the right to set the physicians' salaries, work schedules, or terms of employment, 3) the method of payment of salaries, 4) the right to control actual medical decisions, 5) whether the parties believed they had an employer-employee relationship, 6) the right to control the details of the work done, 7) whether the employer provided the tools, instrumentalities and place of work, 8) the duration of the relationship between the parties, 9) the provision of employee benefits, and 10) the tax treatment of the hired party. Chase, 31 Mass. App. Ct. at 666; Harding v. Goodman, M.D., 2001 WL 771183 at 2 (Brassard, J.). In Chase v. Independent Practice Association, Inc., the Court held that a medical corporation, which the Court equated to a hospital, could not be held vicariously liable for the negligent acts of the physician because it did not control the professional activities of the physician, furnish a salary to the physician, have the right to hire or terminate the physician, or set the physician's work schedule or terms of employment. Additionally, the entity did not control the physician's medical decisions. Id. at 666.

Dr. Long was not an employee, agent or servant of MetroWest. He was affiliated with MetroWest solely as an independent contractor with staff privileges which enabled him to perform surgery on its premises. See Affidavit of Rebecca Heffernan; Affidavit of Dr. Long, attached as Exhibit C. Dr. Long and MetroWest understood his relationship with MetroWest to be that of independent contractor. See Affidavits of Dr. Long and Rebecca Heffernan. MetroWest did not control the professional activities of Dr. Long, it did not pay his salary or furnish W-2 forms, it did not set his work schedule or the terms of his employment, it put no restrictions on his ability to practice medicine, it did not

4

provide him with employee benefits and it did not control the care he delivered to his patients. See Affidavits of Rebecca Heffernan and Dr. Long.

As the remaining Defendant physicians Drs. Long and Onel were not MetroWest's agents, servants or employees, MetroWest's Motion for Summary Judgment as to the Plaintiff's counts of negligence, gross negligence, willful, wanton and/or reckless conduct, failure to inform, breach of contract and civil rights violations based on the theory of vicarious liability should be allowed.

B.  Mr. Koback's Claim of Direct Negligence Against MetroWest is Unsupported by the Facts and Cannot withstand a Motion for Summary Judgment.

As stated previously, Mr. Koback's claims against MetroWest appear to be vicarious in nature. MetroWest recently served Mr. Koback with interrogatories in which it asked Mr. Koback to set forth all facts which form the basis of his allegations of negligence, gross negligence, breach of contract, and failure to inform against MetroWest.[4] See MetroWest's Interrogatories 15, 23, 25, and 26, attached as Exhibit D. Instead of devising a specific answer for each separate interrogatory, Mr. Koback drafted one lengthy answer which he photocopied and appended to each interrogatory. See Mr. Koback's Answers to MetroWest's Interrogatories, #1, attached as Exhibit E. The only hint of a direct negligence claim against MetroWest occurs when Mr. Koback asserts in his Answers to Interrogatories that Framingham Union Hospital discharged him too early following surgery that was performed by Dr. Long on November 12, 2004. Mr. Koback states that he was "rushed out of the hospital that very morning" after surgery and that

---

[4] Mr. Koback's Complaint fails to allege any fact supporting his claim of Civil Rights Violations. Additionally, Mr. Koback's Complaint and Answers to Interrogatories provide no facts which support any direct allegations against MetroWest for gross negligence, willful, wanton and/or reckless conduct, breach of contract and failure to inform.

Dr. Long did not guard against "Framingham Union Hospital's rapid expulsion of his patient." <u>See</u> Mr. Koback's Answers to MetroWest's Interrogatory, #1.

Contrary to Mr. Koback's allegations, Framingham Union Hospital was not responsible for his discharge. As Mr. Koback's surgeon, Dr. Long was the person responsible for determining when Mr. Koback was ready to be discharged. On November 13, 2004, Dr. Long signed Mr. Koback's discharge order in which he wrote "Discharged to home. Appointment with Dr. Long 1 week." <u>See</u> MetroWest Medical Center's Doctor's Order Sheet, attached as Exhibit F. As Framingham Union Hospital did not discharge Mr. Koback, Mr. Koback's negligence claim against MetroWest for early discharge is unsupported by the record. Mr. Koback has also failed to offer evidence through expert testimony or otherwise that supports any direct allegations of gross negligence, breach of contract, willful, wanton and/or reckless conduct, failure to inform or civil rights violations against MetroWest.[5] Wherefore, MetroWest's Motion for Summary Judgment as to any direct allegation brought against MetroWest should be granted.

### III. <u>CONCLUSION</u>

As MetroWest is not vicariously liable for Dr. Long's treatment of Mr. Koback as Dr. Long was an independent contractor, MetroWest's Motion for Summary Judgment as to Mr. Koback's allegations of vicarious liability should be granted. Because MetroWest did not control or direct Dr. Long's conduct in the course of his examinations and treatment of Mr. Koback, and because it did not control any of the administrative

---

[5] It is unclear from Mr. Koback's Answers to Interrogatories and Complaint if he even seeks to bring direct allegations against MetroWest or whether his allegations against MetroWest are grounded entirely in the theory of vicarious liability.

aspects of Dr. Long's employment such as hiring, salary, benefits or shift assignment, Dr.

Long's relationship with MetroWest was that of an independent contractor.

Additionally, any direct allegations made against MetroWest for negligence, gross

negligence, breach of contract, willful, wanton and/or reckless conduct, failure to inform

or civil rights violations are unsupported by the record. Wherefore, the Defendant,

MetroWest Medical Center, respectfully requests that this Court grant its Motion for

Summary Judgment as to all direct allegations made against MetroWest.


Barbara Hayes Buell, BBO# 063480
BLOOM & BUELL
Attorney for Defendant,
*MetroWest Medical Center*
1340 Soldiers Field Road, Suite Two
Boston, MA 02135-1020
(617) 254-4400

Dated:  April 10, 2007


*Certificate of Service*

I hereby certify that I have served a true copy
of the within document upon all concerned
parties, by mail, postage prepaid, who are not otherwise
served electronically.

4-10-07

7

# EXHIBIT A

**Commonwealth of Massachusetts**    ϡ.ϡ✓
County of Suffolk
The Superior Court

Notice sent
3/07/2006
B. H. B.                A. J. G., JR.
B. & H.                 L. G. R. J.
D. S. K.                M. M. Mc. & K.        CIVIL DOCKET# SUCV2005-03084
S.J.G.                  A. B. G.
       Donald S Koback  J. F.
vs.                     A. C. H. W. & G.      (sc)
John P Long M.D.

## FINDING OF THE MEDICAL MALPRACTICE TRIBUNAL
(Pursuant to M.G.L. Chapter 231, Section 60(b) as amended)

The above entitled action came on for hearing before the appointed medical tribunal on **03/06/2006**, and was argued by counsel, and thereupon, upon consideration thereof, the plaintiff(s) offer of proof, pleadings, hospital records and other documents presented, the tribunal finds:

*(1) For the plaintiff(s) _____ and that the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*(2) For defendant(s) _____ because the plaintiff(s)_____ action is merely an unfortunate medical result.

If a finding is made for the defendant or defendants in the above entitled action **the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of Six Thousand ($6,000.00) Dollars in the aggregate** secured by cash or its equivalent with the Clerk/Magistrate of this court, payable to the defendant or defendants in said action for costs assessed, including witness and expert fees and attorneys fees if the plaintiff(s) does/do not prevail in the final judgment. The presiding justice may, withing his/her discretion, increase the amount of the bond required to be filed. **If said bond is not posted within thirty (30) days of the tribunal's finding the action shall be dismissed.** Upon motion filed by the plaintiff(s), and a determination by the court that the plaintiff(s) is/are indigent said justice may reduce the amount of the bond but may not eliminate the requirement thereof.

Dated: **03/06/2006**

Justice of the Superior Court

_____
Associate Justice of the Superior Court Dept.

Legal Member:

_____
Attorney - Tribunal Member

Medical Member:

_____
*Physician - Tribunal Member
*Health Care Provider - Tribunal Member

**\*strike inapplicable words**

**cm**

# EXHIBIT B

UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF MASSACHUSETTS

DONALD S. KOBACK,                            )
                                             )
        Plaintiff,                       )
                                             )
                                             )
                                             )
v.                                           )
                                             )
METROWEST MEDICAL CENTER,                    )
LEONARD MORSE HOSPITAL,                      )  CIVIL ACTION NO. 05-CV-10798-WGY
FRAMINGHAM UNION HOSPITAL,                   )
NEW ENGLAND MEDICAL CENTER,                  )
TUFTS UNIVERSITY SCHOOL OF                   )
MEDICINE, HMO BLUE OF                        )
MASSACHUSETTS, EMANUEL                       )
FRIEDMAN, M.D., JOHN P. LONG, M.D.           )
AND EROL ONEL, M.D.,                         )
                                             )
        Defendants.                      )

## AFFIDAVIT OF REBECCA HEFFERNAN

I, Becky Heffernan, hereby depose and state the following based upon my personal knowledge:

1.     I am the Director of Human Resources at MetroWest Medical Center.

2.     In 2004, Dr. Long maintained surgical privileges at MetroWest Medical Center. Dr. Erol Onel is not affiliated with MetroWest Medical Center and has never maintained surgical privileges at MetroWest Medical Center.

3.  In 2004, Dr. Long was affiliated with MetroWest Medical Center solely as an independent contractor with hospital privileges. MetroWest Medical Center did not control the professional clinical activities of Dr. Long, it did not pay his salary or furnish W-2 forms, it did not set his work schedule or set the terms of his employment, it put no restrictions on his ability to practice medicine, it did not furnish employee benefits to him and it did not supervise, direct or control the care he delivered to his patients. MetroWest Medical center did not employ Dr. Long and at no time did MetroWest Medical Center believe it was the employer of Dr. Long.

*Sworn under the penalties of perjury this*  ___28___  *day of*  ___February___ , 2007.

Rebecca Heffernan
Director of Human Resources
MetroWest Medical Center

# EXHIBIT C

UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD S. KOBACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| METROWEST MEDICAL CENTER, | ) |
| LEONARD MORSE HOSPITAL, | ) CIVIL ACTION NO. 05-CV-10798-WGY |
| FRAMINGHAM UNION HOSPITAL, | ) |
| NEW ENGLAND MEDICAL CENTER, | ) |
| TUFTS UNIVERSITY SCHOOL OF | ) |
| MEDICINE, HMO BLUE OF | ) |
| MASSACHUSETTS, EMANUEL | ) |
| FRIEDMAN, M.D., JOHN P. LONG, M.D. | ) |
| AND EROL ONEL, M.D., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF JOHN P. LONG, JR., M.D.

I, John P. Long, Jr., M.D., hereby depose and state the following based upon my personal knowledge:

1. In 2004, I maintained staff privileges at MetroWest Medical Center which permitted me to treat patients at MetroWest Medical Center.

2. My relationship with MetroWest Medical Center in 2004 was that of independent contractor. I did not receive a salary or benefits from MetroWest Medical Center and MetroWest Medical Center did not control, direct or supervise my practice of medicine or my treatment of patients.

3. At no time during my treatment of the Plaintiff, Donald Koback, was I an employee of MetroWest Medical Center.

*Sworn under the penalties of perjury this*  27   *day of*  MARCH  , 2007.

_____
John P. Long, Jr., M.D.

-1-

# EXHIBIT D

UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| DONALD S. KOBACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| METROWEST MEDICAL CENTER, ) | |
| LEONARD MORSE HOSPITAL, ) CIVIL ACTION NO. 05-CV-10798-WGY | |
| FRAMINGHAM UNION HOSPITAL, ) | |
| NEW ENGLAND MEDICAL CENTER, ) | |
| TUFTS UNIVERSITY SCHOOL OF ) | |
| MEDICINE, EMANUEL ) | |
| FRIEDMAN, M.D., JOHN P. LONG, M.D. ) | |
| AND EROL ONEL, M.D., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT, METROWEST MEDICAL CENTER'S, INTERROGATORIES TO BE ANSWERED BY PLAINTIFF, DONALD S. KOBACK

1.     Please identify yourself fully, giving your full name, date of birth, social security number, residence, occupation, name and business address of your employer and, if married, the name of your spouse, social security number, occupation, name and business address of your spouse's employer.

2.     Please describe all injuries, ailments, or pains which you claim to have suffered as a result of the occurrences set forth in your complaint, stating the parts of your body so affected, the severity of said injuries, ailments or pains, and how long each lasted.

3.     If as a result of the occurrences alleged in your complaint you are claiming any present or permanent ailments, injuries or pains, please describe the same fully, stating their nature, extent and location.

4.     If, as a result of the occurrences set forth in your complaint, you were wholly or partly incapacitated from work or other normal activity, please describe the nature of such incapacitation fully, including how long and between what dates you were wholly confined to a hospital, to a bed, or to your house, indicating which.

5.    Please give an account, itemized as fully and carefully as possible, of all losses and expenses which you claim were incurred by you as a result of the occurrences set forth in your complaint, including those losses or expenses which are attributable to hospitals, doctors, dentists, medicines and loss of earnings.

6.    Please describe the nature and extent of the medical, dental, hospital, or other therapeutic treatment which you claim to have received as a result of the occurrences set forth in your complaint, stating in each case the date thereof and the names and addresses of physicians, dentists, therapists, and hospitals involved.

7.    If, as a result of the occurrences alleged in your complaint, you lost any time from your occupation, employment or schooling, please describe such loss fully, including, but not limiting your description to a statement of what duties you were required to perform in your occupation prior to the said occurrences, the full name and address of your employer or school which you attended prior to the alleged occurrences, your average weekly income from your work before the alleged occurrences, and the dates that you lost from your occupation, employment or schooling.

8.    Please describe fully and in complete detail all illnesses, injuries, diseases or operations not caused by the occurrences alleged in your complaint which you had or suffered from within five years prior to the date of the occurrences alleged in your complaint to the present, setting forth the dates upon which each of the above was experienced.

9.    Please state everything that was done by this defendant relative to examining you, giving the respective dates and places of each examination, the parts of your body so examined, and the methods and instruments used.

10.   Please describe as well as you can your physical condition when this defendant first saw you and on each occasion thereafter when this defendant saw you, setting forth the dates.

11.   With reference to the "condition", illness, ailment or injury from which you suffered when you first saw this defendant, please describe such condition as fully as possible, including in that description, approximately how long you had suffered from it, the nature of all treatments received for it prior to this first interview with this defendant with the approximate date of such treatment, the names of hospitals or other places where you were treated for it prior to this first interview, and the names and addresses of any persons who treated you for this condition prior to this defendant.

12.   Please set forth as well as you can the substance of all statements, communications or conversations by or between you and this defendant relative to your condition on each respective date that this defendant saw you, setting forth those dates and the names and addresses of other persons present on each occasion.

13.   Please give in substance all advice or instructions given by this defendant relative to your care and treatment, setting forth the dates of such advice or instructions.

2

14. Please state as fully and as completely as you can everything that this defendant prescribed for you on each respective date when this defendant saw or treated you.

15. With respect to the allegations of negligence in your complaint, please set forth all facts known to you, your agents or servants, on the basis of which you have made these allegations.

16. Kindly describe with particularity, the expert testimony, if any, that you intend to offer at trial, including in such description, the name, business address, specialty, education, training and experience of any such expert with a statement of the subject matter on which he/she is expected to testify, the substance of the facts and opinions to which he/she is expected to testify and a summary of the grounds for each opinion.

17. Please list by name and address any and all witnesses you intend to call at the time of trial.

18. Kindly set forth in the fullest detail possible the date upon which you learned that you had suffered harm related to care by this defendant, and the full circumstances of any delay in obtaining such information from the date or dates when you were cared for by this defendant.

19. If, as a result of the occurrences alleged in your Complaint, you are seeking to recover for any economic loss, including, but not limited to, costs or expenses of hospitals, doctors, dentists, therapists, medicines, medical care, custodial care or rehabilitation services, and/or loss of earnings, then please set forth in detail whether any such loss has been, or will be replaced, compensated or indemnified or paid for directly by any collateral source of benefits whatsoever, including, but not limited to, the Social Security Administration, Medicare, any State or Federal income disability or Worker's Compensation Act, any income disability coverage, or by any contract or agreement of any group, organization, partnership or corporation to continue to pay in whole or in part your wages or income or to provide, pay, or reimburse the cost of medical, hospital, dental, or other health care services, describing in complete detail and with particularity each such source and the amounts so paid.

20. Please list separately, by payee, any and all payments made by you or by someone on your behalf, representing the cost of a premium for any benefits you have listed in the preceding Interrogatory made in the one-year period immediately preceding the accrual of your cause of action.

21. If, during the pendency of this action, there exists a policy of insurance which provides income disability coverage, please set forth the particulars of such coverage including the names and addresses of the parties to this policy, the date of issuance and termination, and whether or not you are willing to renew and/or continue the policy of insurance during the pendency of this action.

3

22.  If, as a result of the occurrences alleged in your Complaint, you have suffered any economic loss for which any present or potential lien has been, or will be, made with regard to that loss, please describe such lien in detail including in such description the name and address of any such lien holder, the dates upon which you were notified of any such lien, and the amount of any such lien.

23.  With respect to your allegations that this Defendant failed to inform the patient of the risks and/or benefits of a certain course of action, please set forth with specificity which risks you allege it was the duty of this Defendant to inform the patient of, which risks you allege this Defendant failed to so inform the patient, the date and occasion when this Defendant allegedly failed in his/her duty.

24.  Please state the name of each and every servant, agent or employee of MetroWest Medical Center whom you allege was negligent with respect to the occurrences alleged in your complaint.

25.  With respect to your allegations of breach of contract, please set forth with specificity the contract you allege you had with this Defendant and how this Defendant breached said contract.

26.  With respect to the allegations of gross negligence in your complaint, please set forth all facts known to you, your agents or servants, on the basis of which you have made these allegations.

*Certificate of Service*

I hereby certify that I have served a true copy of the within document upon all concerned parties, by mail, postage prepaid.

*Barbara H Buell*

Dated: *January 5, 2007*

*Barbara H Buell*
Barbara Hayes Buell, BBO# 063480
BLOOM & BUELL
Attorney for Defendant,
*MetroWest Medical Center*
1340 Soldiers Field Road, Suite Two
Boston, MA 02135-1020
(617) 254-4400

4

# EXHIBIT E

# CERTIFICATE OF SERVICE

WITHOUT WAIVING ANY rights privileges, or immunities, I, DONALD S. KOBACK, PLAINTIFF, PRO SE, CIVIL ACTION NO.: 1:05-CV-10798-WGY, DONALD S. KOBACK VS. METROWEST MEDICAL CENTER, ET. AL.) HEREBY CERTIFY THAT THE FOLLOWING DOCUMENTS INCLUDING THIS CERTIFICATE OF SERVICE WERE MAILED (FILED, EN ROUTE) AND SERVED, POSTAGE PREPAID (U.S.P.S.) ON THE FOLLOWING ATTORNEYS AT LAW WHO REPRESENT OR ARE RETAINED BY THE DEFENDANTS —

## 1. DOCUMENTS:

AFFADAVIT AS TO STATEMENTS AND DOCUMENTS CONTAINED IN PLAINTIFF, DONALD S. KOBACK'S REQUEST FOR ADMISSION;

PLAINTIFF, DONALD S. KOBACK'S OBJECTIONS, ANSWERS TO "DEFENDANT, METROWEST MEDICAL CENTER'S, INTERROGATORIES TO BE ANSWERED BY PLAINTIFF, DONALD S. KOBACK";

## 2. DEFENDANTS' ATTORNEYS AT LAW

KARA A. BETTIGOLE

Barbara Hayes Buell, Esq.
Bloom and Buell
1340 Soldiers Field Road, Suite 2nd
Boston, MA 02135

Daniel J. Griffin, ESQ.
Lynda Riesgo Jensen, Esq.
Martin, Magnuson, McCarthy &
Kenney
101 Merrimac St., 7th Floor
Boston, MA 02114

Bernard Guekguezian, Esq.
Judith Feinberg, Esq.
Adler, Cohen, Harvey, Wakeman
& Guekguezian
75 Federal Street, 10th FLOOR
Boston, MA 02110

Matthew R. Connors, Esq.
Ficksman & Conley, LLP
98 N. Washington Street, Suite 500
Boston, MA 02114

DATE: JANUARY 24, 2007

SIGNED UNDER PAINS AND PENALTIES OF PERJURY ON JANUARY 24, 2007

DONALD S. KOBACK, PLAINTIFF
PRO SE  DATE: JANUARY 24, 2007

U. S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION
(BOSTON, MASS.)

| | |
|---|---|
| DONALD S. KOBACK<br>PLAINTIFF,<br>PRO SE,<br><br>VS,<br><br>METROWEST MEDICAL<br>CENTER, ET. AL,<br>DEFENDANTS, | CIVIL ACTION NO. :<br><br>1:05-CV-10798-<br>WGY |

AFFADAVITAS TO STATEMENTS
AND DOCUMENTS CONTAINED IN
PLAINTIFF DONALD S. KOBACK'S
REQUEST FOR ADMISSION

EXCEPT FOR THE MEDICAL RECORDS
OF M.D. EMANUEL FRIEDMAN, THE
STATEMENTS AND DOCUMENTS
CONTAINED AND LOCATED IN PLAINTIFF
DONALD S, KOBACK's REQUEST FOR
ADMISSION TO M.D. EMANUEL
FRIEDMAN AND METROWEST MEDICAL
CENTER, ET, AL, ARE TRUE AND
GENUINE RESPECTIVELY.

SIGNED UNDER PAINS AND PENALTIES OF PERJURY

DONALD S. KOBACK
PLAINTIFF  JANUARY 24, 2007

U.S. DISTRICT COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION
(BOSTON, MASS.)

| | |
|---|---|
| DONALD S. KOBACK<br>PLAINTIFF,<br>PRO SE,<br><br>VS.<br><br>METROWEST MEDICAL<br>CENTER, ET. AL.,<br>DEFENDANTS | CIVIL ACTION No.:<br>1:05-CV-I0798-WGY |

PLAINTIFF, DONALD S. KOBACK'S
OBJECTION, ANSWERS TO
"DEFENDANT METROWEST MEDICAL
CENTER'S INTERROGATORIES
TO BE ANSWERED BY PLAINTIFF,
DONALD S. KOBACK"

PURSUANT TO Fed. R. Civ. P. RULE 33.
EACH INTERROGATORY 1
up to, and including 26
AS FOLLOWS—

-1-

1. Please identify yourself fully, giving your full name, date of birth, social security number, residence, occupation, name and business address of your employer and, if married, the name of your spouse, social security number, occupation, name and business address of your spouse's employer.

1.  FOR EACH OBJECTION, BELOW, PLAINTIFF,
    SPECIFICALLY DOES NOT WAIVE EACH AND EVERY
        PRECEDING OBJECTION,
    OBJECTION, attorney client privilege.
    OBJECTION: Discovery imposes reciprocal
    obligations. The defendants constitute
    one unit. the failure of defendant M.D.
    Emanuel Friedman to respond to
    plaintiff, Donald S. Koback's Request
    for Admission constitutes a failure
    of the defendant, M.D. John P. Long Jr.
    Co-conspirator.
    OBJECTION: Pursuant to Fed.R.Civ.P.
    RULE 26(3), the defendants, including
    defendant, M.D. John P. Long Jr.
    have violated the dictates of
    promptly filing and serving RULE
    26(3)(A) 26(3)(B), 26(3)(C) in
    addition to Rule 26(a)(1) and
    26(a)(2) & initial disclosures,
    OBJECTION: Without waiving attorney
    client privilege, and the objections
    above, documents (RULE 34) or
    answers (RULE 33) with respect thereto
    not in plaintiff Donald S. Koback's
    possession, custody or control BCBS,
    OBJECTION: All material, relevant USDHHS
    medical and hospital record
    disclosures, served on all defendants,
    OBJECTION: Said Request
    for Production and Interrogatories
    seek immaterial and/or, irrelevant or for
    documents or answers, and/or which documents
    or answers requested or interrogated
    seek things wherein the prejudice outweighs

any probative value asserted and/or that things (answers, documents) are not of a type or a kind which would not properly be admitted leaving their weight to the fact finder (judge and/or jury)

OBJECTION: Defendant seeks little more than a scintilla.

OBJECTION: Defendant seeks matter (answers and documents) relating to out-of-court declarants - hearsay.

OBJECTION: Plaintiff Donald S. Koback raises an objection to each and every hearsay exception which the defendants claim.

OBJECTION. As plaintiff does not seek loss of income, but, rather compensatory and punitive damages for hospital bills, medical bills, loss of consortium, pain and suffering, physical mental injuries, infections, discoloration of penis, scrotum, disfigurement loss of function.

OBJECTION: WITHOUT WAIVING THE AFORE ANSWERED (RULE 33) and afore-produced (Rule 34), Plaintiff Donalds. Koback answers and/or produces as follows: NO FURTHER ANSWER REQUIRED.
RULE 33
NONE. RULE 34

OBJECTION: WITH WAIVING each and every single objection above,

The plaintiff produces [ in Request for Production 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, ] LETTER TO BLUE CROSS BLUE SHIELD, New England Medical Center, et al written by Michael P. Donovan, M.D. ( see signature ) on behalf of the plaintiff, Donald Skoback dated December 28, 1999; and appointment card dated 6/28/5 1:45 RECEIVED FROM M.D. JOHN P. LONG, JR. who was standing behind his receptionist waving good-bye to the plaintiff, Donald S Kroback

(1) OBJECTION. WITHOUT WAIVING OBJECTIONS AFORESAID, plaintiff, Donald S. Koback is also known as DONALD STANLEY KOBACK, OBJECTION TO SOCIAL SECURITY NUMBER question, D.O.B.: 12/17/51, 145 Sunnyside Ave, WOONSOCKET, RHODE ISLAND, lawyer

OBJECTION: PLAINTIFF, DONALD S. KOBACK OBJECTS TO ALL ANSWERS AND DOCUMENTS SOUGHT TO PROVE THE TRUTH OF THE MATTER ASSERTED, ACCORDING TO THE DEFENDANT'S PRIGGISH, tunnelled, one-sided vision, perspective fraught with overzealous inaccuracies OBJECTION. Without waiving above objections, documents or answer sought seek to by the defendant John P. Long, M.D. John P. Long, Jr seek to prop up an insufficient defense, or to dredge up redundant, immaterial, impertinent and/or scandalous MATTER

Without waiving above,

OBJECTION! Said documents and answers sought by the defendant, M.D. John P. Long, Jr. are being presented for an improper purpose such as to harass, or to cause unnecessary delay and needless increase in the cost of litigation.

OBJECTION! Plaintiff's objections WITHOUT WAIVING ABOVE are reasonably based on a lack of information or belief.

OBJECTION! Without waiving the above, when plaintiff, Donald S. Kobach entered M.D. John P. Long, Jr.'s office waiting area the plaintiff went directly to the receptionist about 15 minutes later, when plaintiff Donald S. Kobach entered M.D. JOHN P. LONG'S OFFICE THE PROSTHESIS WAS EX- TRUDING, OR PROTRUDING OUT OF THE LEFT SIDE OF THE PENIS but not yet out of the urethra. Plaintiff, Donald S. Kobach spoke the day before to Dr. Michael P. Donovan's receptionist and she made plaintiff aware that he should come in immediately & she further intimates that the plaintiff is one of Dr. Michael P. Donovan's patients.

OBJECTION; OBJECTION TO REQUEST FOR PRODUCTION ARE TO THE WHOLE. RESERVE MOTIONS IN LIMINE VOIR DIRE

SUPPLEMENT; PLAINTIFF, DONALD S. KOBACH RESERVES RIGHT TO SUPPLEMENT AS TO OTHER DEFENDANTS AS WELL AS THIS DEFENDANT, M.D. John P. Long, Jr., M.D. ONCE THEY COMPLY WITH PLAINTIFF'S DISCOVERY.

DUPLICATE ORIGINAL — Donald S. Woleck January 4, 2007

OBJECTION (34).   OBJECTION (Continued) (33)   June-MIDJuly, 1992 (INFECTIONS)   Invasive Irrigation

1-4-2007

Plaintiff made each doctor in this Civil action aware of the etiology, from begin 7-25-92 to end, up to that point in time — 7-15-92 onward (irrigation), through foreign bodies, surgeries, infections, injuries, they each acknowledged their awareness. but stated they would examine past records (which they failed to do — being negligent to do so — ACTING, KNOWING DISREGARD)

I explained in no uncertain terms the desultory performance of the past defendant doctors and hospitals and that I needed their assurances and promises that they were ready, able, and willing to ameliorate (OR improve) what was left of him when he stood before them. They represented that they were ready, willing and able to improve. Plaintiff made clear that he understood such representations to be material (of great weight + importance) and so he asked, whether he could, should, or would rely on such material representations then Sure he should could and, if in his shoes, would rely. Plaintiff asked whether they intended for him to rely on these material representations and they responded by declaring, expressly that they intended for him to rely on their representations. Plaintiff made it perfectly clear that he would not go forward unless or except for the material representations which they intended for him to rely on and which was about and did in fact reasonably rely to his substantial detriment.



they doctors and their attendants blurted
out) spontaneously or claimed that
they were treating him *"Qu Contraire"* (to the
*contrary or promises to ameliorate)* with [his] mistakes, errors, etc:
things which needed to be done, left
undone, res ipsa loquitur,
ræs gestae (res gestae), res fungibles.



Emanuel Friedman

Some
At ~~any~~ ~~time~~ date and time, prior to
8-4-1993,

HE SHOWED ME    Single dose — 21 hours priapism

Triple dose — 8 days Priapism

full syringe    dose — I was terrified at full dose
· no regime was ever discussed         After 8 days
                                        priapism
✓  Implant of multiple ~~pros~~ piece penile prosthetic  ↓
      twill be the cure-all                    7-15-92

Emanuel Friedman — Viagra — to treat
Complaints of pain — handful —and wrote a VIAGRA
✓  while I was hospitalized Knowing that    Prescription
such drugs were contraindicated and       for
only exacerbated the pain — an act        the
of cruelty date                           Plaintiff
                                          Donald
                                          Robert
                                          which he
         ~~...~~ continued                handed to
                                          the plaintiff

③

Sum up with Reserve

Right to serve additional 33+34

Req for admission
        to   M.D Emanuel Friedman

Ronald Koback
1-508-875-2001 (of 95 Lincoln St, FRAMINGHAM, MASSACHUSETTS
U.S.A.

After implanting his penile prosthetic device

Dr. Emanuel Friedman
Telephone No. 1-508-875-2001.

"Cracked a JOKE" Let's hope these penile prosthesis isn't defective — Sometimes the deflation mechanism doesn't deflate and Sometimes the balloon ~~the ball~~ ball which pumps, air OR FLUID into the balloons or the two sides of your penis has pin holes in it so it doesn't inflate

(4) After the surgery I had many follow-up doctor's office visits with Dr Emanuel Friedman begging him to show how the deflation mechanism functioned.

On each occassion (sp?) he pumped the ball in my scrotum making my penis even harder then he touched the deflation mechanism

On each follow-up, he failed to deflate, pumped it up, saw that the pain was increasing, my condition worsening — all with a grin

In "Additien" Dr Emanuel Friedman see all above or 10-18-2006

2.AAA.

Tel No 1-508-370-7703
139 LINCOLN STREET
FRAMINGHAM MASS. 01701 USA

Ronald Kobar

and to the urethra outer lining

disassembled, broken

Infected

Pulled with grasping forceps upon Prosthetic device(s)

Pulled down into the bladder ✗

DESPITE PULLING with grasping forceps upon
he remains of the John P Doe, Jr Prosthedic device

"Curiously" the remains of THE R Penis
Right side prosthedic device(s) were
sutured or stitched in and out of the
outside of my penis and the inner lining
or wall of my penis leting (sp?) in

or exposing the inside of my penis and
he rest of my body to external (out
side of my body - i.e. bacteria,
germs, living organisms of every type and description
dirt, grime, chemicals which exist in the outdoor world

— Sutured or stitched to urethra

— tortuous urethra ←

— dysfunctional, disassembled and/or broken
penile prosthesis pulled out of hold
holes punctures wounds in my penis
as prosthese move out through the
urethra

John P. Kobar
1-508-370-7703
In addition
Disable
as
described above

RK 34
3 × 4
3

⑤

BKobar - 2006
10-18-

OBJ RULE 33, RULE 34
PRODUCED      ANSWERED

WHEN   ⊘11
WHOLE  ⊘  ERECT

SLIGHT DOWNWARD pointing

Under 8¼"

1st SHOT SOME SWELLING 6/28/74
twice Sixth INJECTION (PAPAVERINE) CAUSING 2 hours
2nd SHOT (overdose)
Penis Swells 2½ girth 1¼ in
w/ Hg in minutes 30-60
girth SHRINKS To
6"

DATES INJECTIONS
6-30 - 7-25, 1992

INJECTION
(PAPAVERINE)
8 days later Priapism/dis cont
w/older issue
Penis is
priapism,
fibrosis,
disengagement,
distigurement
loss of foreskin

M.D., EMANUEL FRIED MAN
Donald A. Custer
1-12-2007

DAC
1-12-2007

TO: DR. J.P.L., DR. JOHN P. LONG, JR. JOHN P. LONG, JR, M.D.
FRAMINGHAM UNION HOSPITAL (MWMC)
FROM "HIS PATIENT", DONALD S. KOBACK      JPL ✳

DATE: July 9, 05   RE: DR JPL's malpractice, error, and/or mistake and/or that of FRAMINGHAM UNION HOSPITAL (MWMC)

SYNONYMOUS OR EQUALS ; M.D. John P. Long, JR

ARRIVED
UPON THE PREMISES
OF DR. JPL,
PATIENT'S APPOINT—
MENT SCHEDULED
ON AN EMERGENCY
BASIS
11-13 BEING
THE DATE THEREOF—  OR WAS IT 11-12-2004  DSK 12-27-06
THE PRECISE TIME,

that one shall be advertised henceforth to DR JPL as well as Dr. John P. Long, JR as his Advertisedname

Z NOTA BENE: Reference to DR JPL otherwise known as Dr. John P. Long, JR

SADDLED

WITH EXCRUCHATING PAI

APPROACHING SHEER MISER

"NINE LIVES"

"NINE LIVES

"NINE LIVES" KEPT

FLASHING

ACROSS HIS PATIENT'S

MIND, AS IF A NEON

LIGHT FLICKERING,

HOUR AND MINUTE
PRESENTLY ESCAPING,
BURIED DEEP IN
THE MIND
OF HIS PATIENT
TWO THOUSAND
FOUR WAS THE
CALENDAR YEAR
2004 A.D.

HIS PATIENT
LOOKING BACKWARDS
NEARLY ASSURED
THAT EIGHT HAD
ALREADY BEEN TAKEN
PRIOR THERETO.

Later, Dr. JPL invited his patient
to his examining room. He requested
that his patient disrobe. Once disrobed
he took his patient's penis and
scrotum into his hand stating that
this was a terrible wound—
the prosthesis protruding out of the
side of his patient's penis and
(and threatened to penetrate, protrude, extrude)
or through the top of the urethea,
(penis hole, etc)
and that he would be forced
to admit his patient to Framingham
Union Hospital, MetroWest Medical Center for immediate
surgery since it was a life or
death matter.
In lieu thereof, Dr. JPL left
his patient in his waiting room

JSM
12-27-2001

in excess of five hours
furnishing neither antibiotics
or anesthetics (painkillers). His patient
sat there in a state of delerium,
the worst misery he had ever
suffered or encountered. his patient WAS nearly glued
Wearing a → wrist watch, PASSING to the
Not until 5½ to 6½ hours later
did Dr. JPL admit his patient
to the surgery room at the hospital
Prior to operating and putting
his patient "under", Dr. JPL
informed his patient and those
around him that his patient should
be hospitalized for at least a
week due to the serious nature of his patient
injuries ; wounds.

His patient "came to",
regained consciousness the following
morning wearing a catheter, and
catheter bag,
his penis no longer visible,
laying inside of his scrotum
Instead of allowing his patient
to remain bedridden, hospitalized for the
week he had   stated as being
necessary the day earlier, his
patient was rushed out of the hospital
that very morning after
with the small catheter bag
blood, without properly acquainting
dripping urine and it                     patient to
His patient
Staggered through the freshly
fallen snow, and cold morning
to his vehicle parked in the lot amongst many
?which, in his condition, was difficult to

Dr. JPL's actions and/or omissions constituted malpractice, neglect, and/or error, inter alia (and of type co he should have admitted his patient immediately upon examing his mortal wounds into Framingham Union Hospital (metrowest Medi connecting his body to anti biotics (anesthetics) and pain killers. He also engaged in malpractice, neglect or error, inter alia (other types of conduct) in not guarding against Framingham Union Hospital (mwmc) rapid expulsion of his patient the morning after surgery when this patient was ill prepared to go out on his own, his wounds still op

As a direct and proximate result, his patient has persistent pain on his penis and scrotum, a chronic pain, numbness, and loss of control in his lower right back, hip, and right leg which have failed to respond to antibiotics. Consequently, his patient's penis, scrotum, lower back pain cause his patient to limp and loose his balance, his patient permanently ruptured and limp. Signed under pains + penalties o

Donald S Noback

DSN

7-10-05

Dr. JPL, holding his patient's penis, could clearly observe that the gaping wounds in his patient's body part exposed his part to dangerous living organisms, and (BACTERIUM) inorganic toxins making it reasonably foreseeable that any delay in hospitalization would threaten his patient's existence or well-being (his need for antibiotics and anesthesia went without saying) and also making it reasonably for-ese that harm would come to his patient if he were expelled from the hospital, prematurely creating a high

risk that the gap between
his hospital IV antibacterial
and hospital cleanliness and the
great outdoors' exposure to dirt,
grime, bacteria and other living organisms
and the time of closure of
the wounds would threaten
his patient's existence and
well being. In brief, it was reasonably
forseeable that delay in admittance
to the hospital and that
rapid expulsion would affect
his patient's health
adversely actually (actual cause)
and proximately causing ill
effects to his patient's penis

scrotum, other internal organs, lower back, hip, and n'leg. calf of which are now more atrophied than before 11-13-05,

Dr. John Phelps, Dr. John Pikus, JR., Metro West Medical Center, et al. jointly + severally liable for injurie and losses depicted herein

Signed Under Pains and Penalties of Perjury the truth be known,

Donald S Koback, Pro Se

Donald S. Koback, Pro Se

7-10-05

OBJECTION(S), RESPONSE(S) Fed. R. Civ. P.
RULE 34 ; OBJECTION(S), ANSWER(S) Fed. R. Civ. P.
RULE 33
MEDICAL AND HOSPITAL BILLS, PAST,
PRESENT, FUTURE CARE OF (DATE LOCATION AMOUNT)
    HMO BLUE XXHO 379 280 (FAIR MARKET VALUE)
    22 RICHARDS ROAD                    0006
    PLYMOUTH, MASSACHUSETTS 02363-0006

RECORDS, written testimony, past, present,
future OF:
        PRIYA KHANNER, M.D.
        UROLOGIST
        ST. VINCENT HOSPITAL
        WORCESTER, MASSACHUSETTS;
        MICHAEL P. DONOVAN, M.D.
        UROLOGIST
        139 LINCOLN STREET
        FRAMINGHAM, MA  01702;
        STANLEY E. KRAUSS, M.D.
        UROLOGIST        NOW OR FORMERLY OF
        139 LINCOLN ST.
        FRAMINGHAM, MA 01702;
        KUMAR, M.D. and PARULKAR, M.D.
        115 WATER STREET
        MILFORD, MA  01757;
        XIANGYANG LI, M.D. original copy
        ADULT PSYCHIATRY     purloined - See
        215 WEST ST.      M.D. LONG, JR.'s INT(33)
        MILFORD, MA 01757; AND (REQ)(34) with
        SYED RAZVI, M.D.        OBJECTIONS
        MILFORD MED-CARE, 160 South Main St.
        MILFORD, MA. 01757

MOTION IN LIMINE, BOTH IN
FRONT OF JURY AND/OR SIDE BAR
OUT OF HEARING OF JURY WITH JUDGE;
VOIR-DIRE DEFENDANT(S)' WITNESSES,
VOIR DIRE DEFENDANT(S)' CROSS EXAMINA-
TION OF PLAINTIFF'S WITNESS AND
VOIR DIRE AND MOTION LIMINE AS TO
PLAINTIFF ~~S 's S~~ DONALD S. KOBACIC'S
WITNESSES:
INTERROGATORIES AND REQUEST
FOR PRODUCTION PREMATURE AND
ANTECEDENT TO DUE DATE:
INTERROGATORIES AND REQUEST FOR
PRODUCTION — CALLS OUT FOR SPECU-
LATION, ASKED AND ANSWERED,
FAIL TO SET FORTH THE UNDER —
LYING PREDICATE ~~AS~~ AS TO EACH
AND EVERY REQUEST FOR PRODUCTION,
ANSWERS TO INTERROGATORIES;
MOTIONS TO STRIKE;
WHEN I VISITED M.D. JOHN P. LONG, JR.
SOME DAYS OR A WEEK OR SO AFTER
THE SURGERY OF NOVEMBER 12, 2004,
NOVEMBER 13, 2004 A DAY LATER, I
DEMANDED TO KNOW (AND BE TOLD)
IF ALL OF THE PIECES OF THE FRAGMENTED,
INFECTED PENILE PROSTHESIS WERE
REMOVED FROM MY PENIS, SCROTUM, LOWER TORSO,
BODY, ~~THEN~~ "JOHN P. LONG, JR., M.D. STATED
THAT HE COULD NEVER BE SURE, AND THAT THERE
COULD STILL (CONTINUES) STILL (OR CONTINUES) TO BE TINY PIECES THAT
REMAIN INSIDE. PRESENT MEMORY REFRESHED, PAST
RECOLLECTION (RECORDED), Foreign Object, Past, Present plus
FUTURE M.D. JOHN P. LONG, JR.

WHEN I FIRST WENT TO SEE OR
VISIT John P. Long, Jr., M.D. I
asked him to promise that he
would provide or give me his
best treatment. Dr. Long, Jr.
said yes he would. I said his
promise to give me his best
treatment was a material representation
upon which I am relying reasonably
Does he intend for it me to
rely on his promise to give
me his best treatment? Long
said yes,

Signed under pains and
penalties of perjury on
January 20, 2007.

Donald S. Kobach
Donald S. Kobach
1-20-2007

# EXHIBIT F

**ALLERGIES**
☐ NONE

**MetroWest Medical Center**
**DOCTOR'S ORDER SHEET**

THE PHARMACY MAY DISPENSE EQUIVALENT CHEMICALS FOR ORDERS
WRITTEN BY PROPRIETARY NAME UNLESS THE NAME IS CIRCLED

METROWEST MEDICAL CENTER
ΛΛ ΛΛ 71450   Μ1 05133172
ΚΛΝΛΟΚ,DONALD S
11/12/04 LONG,JOHN MD
    52Y 12/17/51
MX
FΛΜ PHYS/ NON-STAFF,DOCTOR

| WEIGHT _____ | HEIGHT _____ | | |
|---|---|---|---|
| **DATE & TIME** | **ADMIT TO:** ☐ INPATIENT | ☐ OBSERVATION | |

11-12-04 / given — NTP 1" Q6° hold for SBP <110 (on acce)
HCTZ 25.mg PO X1 ~~add~~ qd.
V.O.K.B. Dr Nino   D. Nahum
Check B.P. Q6° prior to NTP
X Med
Syst em
6:
W/NING

11/12 — TO KB Dr Nino/CMUShaick RN

Faxed Com 2145 — Δ HCTZ 25 mg PO QD

nokd
CMUShaick RN
11/12/04 2250

11/13/04 — Disch to home
Rx Lenaquin 500; Δ X7d
Foly to edy dog.
Appt č Dr Long 1 wk.
noted L. Kassfield RN 1300  11/13/04

UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD S. KOBACK,            )<br><br>        Plaintiff,         )<br>                          )<br>                          )<br>v.                           )<br>                          )<br>METROWEST MEDICAL CENTER,   )<br>LEONARD MORSE HOSPITAL,     ) CIVIL ACTION NO. 05-CV-10798-WGY<br>FRAMINGHAM UNION HOSPITAL,   )<br>NEW ENGLAND MEDICAL CENTER,   )<br>TUFTS UNIVERSITY SCHOOL OF    )<br>MEDICINE, HMO BLUE OF        )<br>MASSACHUSETTS, EMANUEL      )<br>FRIEDMAN, M.D., JOHN P. LONG, M.D. )<br>AND EROL ONEL, M.D.,         )<br>                          )<br>        Defendants.      )  | |

DEFENDANT, METROWEST MEDICAL CENTER'S,
CONCISE STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

1. MetroWest Medical Center ("MetroWest") comprises Leonard Morse Hospital and Framingham Union Hospital.

2. On November 12, 2004, the Plaintiff, Donald S. Koback, underwent surgery at Framingham Union Hospital. Defendant Dr. John Long performed the surgery.

3. In November of 2004, Dr. Long was not an employee of MetroWest. Dr. Long was an independent contractor with staff privileges at MetroWest which permitted him to conduct surgery on the premises of MetroWest. See Affidavit of Dr. Long, attached as Exhibit D; See Affidavit of Becky Heffernan, attached as Exhibit C.

4. Mr. Koback alleges that MetroWest is vicariously liable for the alleged negligence of the Defendant physicians. Mr. Koback has provided no evidence that MetroWest employed Dr. Long in 2004 or at any other time. Defendant Dr. Emanuel Friedman has been dismissed from the case. Defendant Dr. Erol Onel is

not affiliated with MetroWest and he never treated Mr. Koback at MetroWest. See Affidavit of Becky Heffernan.

5. Mr. Koback's only direct claim of negligence against MetroWest alleges that MetroWest discharged him too early following the surgery performed by Dr. Long. MetroWest did not discharge Mr. Koback. Dr. Long issued the order discharging Mr. Koback from Framingham Union Hospital on November 13, 2004 following his surgical procedure. See MetroWest Medical Center Doctor's Order Sheet, attached as Exhibit G.

6. Mr. Koback has produced no expert support for any claim of negligence against MetroWest, either direct or vicarious. Mr. Koback has produced no evidence supporting his claims against MetroWest of gross negligence, willful, wanton and/or reckless conduct, breach of contract, failure to inform or civil rights violations.

7. A medical malpractice tribunal was held in Massachusetts Superior Court on March 2, 2006 pursuant to M.G.L. c. 231, §60B. The tribunal ruled that Mr. Koback's offer of proof was insufficient to raise a legitimate question of liability as to MetroWest.

Barbara Hayes Buell, BBO# 063480
BLOOM & BUELL
Attorney for Defendant,
*MetroWest Medical Center*
1340 Soldiers Field Road, Suite Two
Boston, MA 02135-1020
(617) 254-4400

Dated: April 10, 2007

*Certificate of Service*

I hereby certify that I have served a true copy of the within document upon all concerned parties, by mail, postage prepaid, who are not otherwise served electronically.

4-10-07