FILED
IN CLERKS OFFICE
2007 APR 26 A 11: 54

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION
(BOSTON, MASSACHUSETTS)

Civil Action No.:
1:05-CV-
10798-WGY

U.S. COURT
OF APPEALS
(FIRST CIRCUIT)
No.: 07-1411

DONALD S. KOBACK,

    Plaintiff,

V.

METROWEST MEDICAL
CENTER, LEONARD
MORSE HOSPITAL,
FRAMINGHAM UNION
HOSPITAL, NEW
ENGLAND MEDICAL
CENTER, TUFTS
UNIVERSITY SCHOOL
OF MEDICINE, HMO
BLUE OF MASSACHUSETTS,
EMANUEL FRIEDMAN,
M.D., JOHN P. LONG,
M.D., AND EROL
ONEL, M.D.

AFFIDAVIT OF PLAINTIFF DONALD
S. KOBACK WHICH REBUTS



"DISCLOSURE OF EXPERT TESTIMONY
OF DAVID KAUDER, M.D. ON BEHALF
OF JOHN P. LONG, JR., M.D.
IN ACCORDANCE WITH
FED. R. CIV. P. 26(a)(2)(B)"
(MEDICAL HISTORY OF DONALD S.
KOBACK IN RELATION TO
JOHN P. LONG, JR., M.D., also
known as, JOHN P. LONG (m.D.)

I, DONALD S. KOBACK, patient
of JOHN P. LONG, JR., M.D., also known
as JOHN P. LONG, HAVE READ THE
REPORT OF THE NON-TREATING,
HIRED PHYSICIAN, DAVID H.
KAUDER, OF 400 HIGHLAND AVENUE,
SALEM, MASSACHUSETTS PURPORT-
ING TO PROVIDE HIS OPINION AS
TO THE CARE/TREATMENT FURNISHED
TO DONALD S. KOBACK, Plaintiff
herein; said David H. Kauder
acting on behalf of said JOHN P.
LONG, JR., M.D. WHICH REPORT IS
DATED MARCH 19, 2007 AND WHICH
WAS RECEIVED ON MARCH 29, 2007
VIA AIRBORNE EXPRESS by
said DONALD S. KOBACK.

SAID REPORT CONTAINS REPEATED
FALSE STATEMENTS DESIGNED
AND INTENDED TO MISLEAD.

FILED
IN CLERKS OFFICE

2007 APR 26  A 11:54

U.S. DISTRICT COURT
DISTRICT OF MASS.

FALSE STATEMENTS DESIGNED, INTENDED
TO MISLEAD:

D.H. Kauder: "The care rendered by Dr. Long
was exemplary in dealing with
this difficult problem."

TRUTH IS:  Care rendered was desultory,
substandard.

D.H. Kauder: "...Full details of the previous
surgery were not available
to Dr. Long at the time..."

TRUTH IS:  John P. Long, M.D., JOHN
P. LONG, JR. M.D. PLACED
HIS HANDS UPON MY GENITALS,
ETC., WHILE I WAS operated
(underwent surgery) on twice
at New England Medical
Center;

MICHAEL P. DONOVAN, M.D.,
my urologist/physician,
was fully aware (Refer to
letter to BLUE CROSS/
BLUE SHIELD IN Plaintiff's
Complaint and Court
DOCKET (NUMBER) # 6)

OF HIS PATIENT, DONALD S, KOBACK'S PREVIOUS SURGERIES AND tortured medical history. John P. LONG, JR, M.D. a/k/a John P. LONG, M.D. WAS, AT ALL RELEVANT TIMES, ENGAGED IN A JOINT VENTURE PRACTICE WITH SAID MICHAEL P. DONOVAN, M.D.

SAID DONOVAN AND LONG KNEW OF MY COMING, WHO I WAS, AND WHAT HAD BEFALLEN UNBEFITTINGLY.

D.H. KAUDER: "... the history, as given by the patient, revealed that the device had been protruding through the penis for the previous ten days ..."

TRUTH IS: Plaintiff, Donald S, Koback, was sitting in Dr. Donovan and Dr. Long's patient waiting 35 minutes after the device had protruded, NOT TEN (10) DAYS AFTER.

D.H. KAUDER:    "Although the patient had no
fever or chills, this
presentation indicates
an infected prosthesis."

TRUTH IS:    Plaintiff, Donald S. Koback,
their patient, was ex-
periencing hot and cold flashes,
warm and cold forehead,
flickering in and out of
consciousness, in delerium,
excruciating pain, all of
which was plainly visible
to John P. Long, JR., M.D.

Knowing that previous
doctors at New England
Medical Center (including
LONG) and MetroWest
Medical Center had
deliberately and with
reckless indifference,
infected their patient,
Donald S. Koback, over
and over again, DR. LONG
PULLED ON THE RIGHT FRAG-
MENT, FRACTURED PENILE
DEVICE, PRETENDING
("CURIOUSLY") NOT TO
REALIZE IT WAS STITCHED

to his patient's urethra at near the top of his penis and to the inside of the right OUTER penis skin) with grasping forceps disconnecting the urethra from the top of the penis; then, thereafter sinking the infected prosthetic device into Donald S. Koback's bladder, gastro-intestinal system, thereby further infecting the patient in a much more dramatic, life threatening way. Instead of "copious" anti-biotics before, during, and after surgery, said Long used penis shrinking drugs and/or chemicals to further reduce plaintiff Donald S. Koback's penis from its remaining 2½ inches to 0 (ZERO) INCHES, bringing to fruition the illegal 8" penis to 0 (ZERO) INCH PENIS — transgendering. ALSO, causing VIBRATING gastro-intestinal system, bladder injuries, limp in right leg.

D.H. KAUDER: "Dr. Long immediately brought this patient to the operating room for removal of the prosthetic device."

TRUTH IS ! Plaintiff, Donald S. Koback was forced to wait in Dr. Donovan, Dr. Long's patient waiting room for over 5½ hours without anti-biotics, without anesthesia, or pain killers. When in surgery, Dr. Long failed to remove sharp, pointed, fragmented, pieces of the prosthetic device — foreign bodies as well as foreign biology infection, leaving same behind in his patient's urogenital, reproductive system, penis, scrotum, belly, gastro-intestinal system, bladder. Length of Stay in hospital November 12, 2004, November 13, 2004.

Dr. Long's patient compelled to depart hospital with small, overflowing urethra (catheter) bag; Again, without anti-biotics;

D.H. KAUDER: "There is nothing that he did, or failed to do, that caused or contributed in any way to any harm to Mr. Kovak."

TRUTH IS: This is a case of RES IPSA LOQUITER (THE THING SPEAKS FOR ITSELF) where lay persons in a jury do not need any medical testimony; So-Called expert testimony by non-treating, hired physicians, who lack all impartiality, ARE EMPLOYED AND Intended to elevate simple, unstandable injuries, etc, and the way they came to be, to complex insolubles, to confuse juries with overly technical terms, and to white wash dark medical practices;

This is also a case of res gestae (RES GESTAE) (things happen) Statements made by doctors, nurses, et. al. to patients are admissible into evidence as well as statements made by patients, to doctors, et. al. (and others)

This is also a case a RES FUNGIBLE. — whereby some are treated as special, for example, a prize racing horse while others are treated a just another box of cereal (corn flakes) off the shelf;

It is well established that medical doctors can testify or give their opinions in areas of medicine which are advertized as specialties as to history, diagnosis, actual, direct cause, proximate cause of injuries diseases of their patients. Kapp v. Ballantine, 380 Mass. 186, 192-193, fn. 7 (1980); Samil v. Baystate Medical Center, Inc., 8. Mass. App. Court 911 (1979)

Signed under pains and
penalties of perjury
on APRIL 19, 2007.

DONALD S. KOBACK
PLAINTIFF, PRO SE
APRIL 19, 2007

**UROLOGY**
**CONSULTANTS**
*of the*
**NORTH SHORE, INC**
Adult and Pediatric Urology

John J. Bucchiere, Jr., M.D., F.A.C.S.
David H. Kauder, M.D., F.A.C.S.
Noel P. DeFelippo, M.D., F.A.C.S.
Anthony M. Filoso, M.D., F.A.C.S.

Thomas E. Kingston, M.D., F.A.C.S.
Michael G. Callum, M.D., F.A.C.S.
Philip Wong, M.D.
Mary Sue Ring, Administrator



March 19, 2007

Judith Feinberg
Adler, Cohen, Harvey, Wakeman & Guekgueziau
75 Federal Street
Boston, MA 02110

**RE:  Donald S. Kovak, pro se v. John P. Long, Jr., M.D.**

Dear Ms. Feinberg:

I am David H. Kauder, M.D., F.A.C.S., who has been enlisted as an expert witness for the above matter.  I am a urological surgeon, licensed in the Commonwealth of Massachusetts, License No. 41052.  I am a Fellow in the American College of Surgeons since 1979.  I received my medical doctor degree from Downstate Medical Center, State University of New York in Brooklyn in June of 1971.  After this, I spent two years in General Surgery at the University of Vermont in Burlington, Vermont; and I then received my urological surgery training at the University of Minnesota from August of 1973 until June of 1977.  Since that time, I have practiced in the Commonwealth of Massachusetts.

I have reviewed the pleadings, other materials, and medical records forwarded to me by counsel.  My opinion is based on my experience and expertise in the field of urology, as well as in the field of penile prosthetics.  After reviewing all of the records and pleadings, it is my opinion that the care rendered by John P. Long, Jr., M.D. complied the standard of care for urological surgery in the care of this problem.  There is nothing that he did, or failed to do, that caused or contributed in any way to any harm to Mr. Kovak.  Dr. Long's care started with a complicated issue that presented to him on November 12, 2004.  The care rendered by Dr. Long was exemplary in dealing with this difficult problem.  The outcome, as documented in Dr. Long's notes, suggests a satisfactory resolution to the problem, with which Dr. Long dealt.

400 Highland Avenue, Salem, Massachusetts 01970
Telephone 978-741-4133    Fax 978-741-7742

Judith Feinberg
Adler, Cohen, Harvey, Wakeman & Guekguezian
RE: Kovak v. Long
March 19, 2007
Page 2


<u>Standard of care of John P. Long, Jr., M.D. encompassing the time from November 12, 2004,
through March 29, 2005</u>:

It is my opinion that Dr. Long met the standard of care for treating this difficult problem.
Dr. Long saw the patient, Donald S. Kovak first on November 12, 2004. History and physical
examination were performed by Dr. Long; and at presentation, this patient presented with
erosion of the penile prosthesis through the head of the penis. This means that the device was
protruding through the penile skin. Full details of the previous surgery were not available to
Dr. Long at that time; however, the history, as given by the patient, revealed that the device had
been protruding through the penis for the previous ten days. Although the patient had no fever or
chills, this presentation indicates an infected prosthesis. Dr. Long immediately brought this
patient to the operating room for removal of the prosthetic device.

At the time of the surgical procedure, there was a penile prosthetic protruding through the
urethra. Dr. Long was able to remove this, but wisely chose to use intraoperative xray in the
form of fluoroscopy to be sure which side of the penis this prosthesis came from. The
intraoperative xray suggested that the left cylinder was removed and the right cylinder was still
remaining. Intraoperative endoscopy was done to be sure that the proximal urethra was intact. It
was, and apparently the only injury was in the distal urethra where the erosion could be seen.
Through a combination of intraoperative endoscopy and manipulation, the second cylinder was
able to be removed as well. Endoscopy was performed, and this noted a residual right-sided
rear-tip extender that was seen radiographically after removal of the cylinders. Dr. Long used
special scissors that could fit through the endoscope, and he was able to cut the sutures that were
holding this in place and removed this. At the end of this procedure, Dr. Long removed all
foreign material from the patient. His evaluation did mention the significant inflammation,
shortening and fibrosis to the penis. The wounds were copiously irrigated with antibiotic
solution, and drains were left in place.

All aspects of Dr. Long's care would meet any standard of care from prosthetic surgery. The
postoperative notes, ten days following Dr. Long's surgery, revealed that the patient was doing
well, considering the past injury that he had had. Severely retracted penis, which is to be
expected considering the amount of scarring and surgery, was noted from the beginning of
Dr. Long's encounter with the patient on November 12, 2004, and certainly continued until the
last note, which was on March 29, 2005, stating that the patient could void well and the noted
retraction of the penis was still present.

Judith Feinberg
Adler, Cohen, Harvey, Wakeman & Guekguezian
RE: Donald S. Kovak v. John P. Long, Jr., M.D.
March 19, 2007
Page 3


Once again, this was a difficult case with numerous potential complications; and the surgical intervention, expectations, and plan of Dr. Long clearly met the standard of care for this type of surgery.

Respectfully submitted,

Electronically Signed

David H. Kauder, M.D.

DHK/car

# CERTIFICATE OF SERVICE

WITHOUT WAIVING ANY rights privileges, or Immunities, I, DONALD S. KOBACK, PLAINTIFF, PRO SE, CIVIL ACTION No.: 1:05-CV-10798-WGY, DONALD S. KOBACK VS. METROWEST MEDICAL CENTER, ET. AL.) HEREBY CERTIFY THAT THE FOLLOWING DOCUMENTS INCLUDING THIS CERTIFICATE OF SERVICE WERE MAILED (FILED, EN ROUTE) AND SERVED, POSTAGE PREPAID (U.S.P.S.) ON THE FOLLOWING ATTORNEYS AT LAW WHO REPRESENT OR ARE RETAINED BY THE DEFENDANTS —

## 1. DOCUMENTS:

MEDICAL AFFIDAVIT OF SYED RAZVI, M.D. ON BEHALF OF HIS PATIENT, PLAINTIFF, DONALD S. KOBACK WHICH REBUTS "DISCLOSURE OF EXPERT TESTIMONY OF DAVID KAUDER, M.D. ON BEHALF OF JOHN P. LONG, JR, M.D. IN ACCORDANCE WITH FED. R. CIV. P. 26(a)(2)(B)";

AFFIDAVIT OF PLAINTIFF DONALD S. KOBACK WHICH REBUTS "DISCLOSURE OF EXPERT TESTIMONY OF DAVID KAUDER, M.D. ON BEHALF OF JOHN P. LONG, JR., M.D. IN ACCORDANCE WITH FED. R. CIV. P. 26(a)(2)(B) (MEDICAL HISTORY OF DONALD S. KOBACK IN RELATION TO JOHN P. LONG, JR., M.D., also known as, JOHN P. LONG, M.D.)

## 2. DEFENDANTS' ATTORNEYS AT LAW

KARA A. BETTIGOLE

Barbara Hayes Buell, Esq.
Bloom and Buell
1340 Soldiers Field Road, Suite Two
Boston, MA 02135

JENNIFER HARTUNIAN

Daniel J. Griffin, ESQ.
Lynda Riesgo Jensen, Esq.
Martin, Magnuson, McCarthy & Kenney
101 Merrimae St., 7th Floor
Boston, MA 02114

Bernard Guekguezian, Esq.
Judith Feinberg, Esq.
Adler, Cohen, Harvey, Wakeman & Guekguezian
75 Federal Street, 10th FLOOR
Boston, MA 02110

Matthew R. Connors, Esq.
Ficksman & Conley, LLP
98 N. Washington Street, Suite 500
Boston, MA 02114

Person In Charge, SPECIALTY CARE, LLC 626 Temple St., DUXBURY, MA 02332

DATE: APRIL 20, 2007

SIGNED UNDER PAINS AND PENALTIES OF PERJURY ON 20 APRIL 2007

MAILING MOVED FORWARD TO APRIL 23, 2007

DONALD S. KOBACK, PLAINTIFF PROSE DATE: APRIL 20, 2007



Optima Shipping & Tracking

**Shipped via Optima Worldwide Shipping on behalf of:**
Jacquelyn O'Dea
Adler, Cohen, Harvey, Wakeman and Guekguezian
75 Federal St.
Boston, MA 02110

**SHIP DATE**   03/28/2007

**ACCOUNT #**   7912-7912

**Ship To Address:**
Donald S. Koback
195 Sunnyside Avenue
Woonsocket, RI 02895
US

**Phone Number:**
617-423-6674

| SERVICE LEVEL | VALUE | OTHER SERVICE |
|---|---|---|
| PRIORITY OVERNIGHT | 100 | |

US

10:30 am

www.scamcode.com

100% Recycled Paperboard

---

FROM:
Adler, Cohen, Harvey, Wakeman
10 Micro Drive
Woburn MA 01801

**AIRBORNE EXPRESS**

To: Donald S. Kobach
195 Sunnyside Avenue
Woonsocket RI
US

ATTN: Donald S. Koback
REF # B100371140174809
ORIGIN    BOS
SHIPMENT NO.
5203498683
ADDITIONAL INFORMATION

SHIP DATE    03/28/07

| WEIGHT (LBS) | PIECES | ZIPCODE |
|---|---|---|
| 0 | 1 of 1 | 02895 |

PHONE 617 — 423 — 6674

SERVICE
**EXP**
5203498683
5203498683

4.00

1030
**NPVK 9R
NEH**

SPECIAL HANDLING SERVICES

5203498683        1 OF 1

# ADLER, COHEN, HARVEY,
# WAKEMAN & GUEKGUEZIAN

### A LIMITED LIABILITY PARTNERSHIP
### ATTORNEYS AT LAW

SIDNEY W. ADLER
ELLEN EPSTEIN COHEN
ALEXANDRA B. HARVEY
GEORGE E. WAKEMAN, JR.*
A. BERNARD GUEKGUEZIAN
MICHAEL P. CONWAY
JENNIFER BOYD HERLIHY*
ERIN M. BROWN
KRISTEN L. CLARKE
JUDITH FEINBERG
BROOKS L. GLAHN
JOHN R. PELLETIER
MICHAEL B. BARKLEY
GABRIEL W. BELL
E. AMY TUCCI*
TIMOTHY M. ZABBO*
LONNA M. STEINBERG

*also admitted in RI
*also admitted in CT

March 28, 2007

*Via FedEx*

Donald S. Koback, *pro se*
195 Sunnyside Avenue
Woonsocket, Rhode Island 02895

Re:    Donald S. Koback, *pro se* v. John P. Long, Jr., M.D., et al.
       United States District Court, C.A. No. 10798-WGY

Dear Mr. Koback:

Enclosed herein please find Disclosure of Expert Testimony of David Kauder, M.D. on Behalf of John P. Long, Jr., M.D. in Accordance with Fed. R. Civ. P. 26(a)(2)(B) in connection with the above-entitled matter:

Thank you for your attention to this matter.

Very truly yours,

Judith Feinberg

JF/jao

Enc.

cc:    Barbara Buell, Esq.
       Linda R. Jensen, Esq.
       Matt Connors, Esq.